*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  March 31, 2016                    521237
_____

DEBBI PAWSON et al.,
                    Appellants-
                    Respondents,

        v
                                        MEMORANDUM AND ORDER

THOMAS J. ROSS et al.,
                    Respondents-
                    Appellants.
_____

Calendar Date:   February 8, 2016

Before:   McCarthy, J.P., Egan Jr., Rose, Devine and Clark, JJ.

                    _____


        Law Office of Ronald L. Kim, PC, Saratoga Springs (Ronald
L. Kim of counsel), for appellants-respondents.

        Breedlove & Noll, LLP, Queensbury (Carrie McLoughlin Noll
of counsel), for respondents-appellants.

                    _____


Rose, J.

        Cross appeal from an order of the Supreme Court (Krogmann,
J.), entered October 2, 2014 in Warren County, which, among other
things, partially denied defendants' motion for summary judgment
dismissing the complaint.

        Plaintiffs – who are former employees of defendant Loftus
Ross, LLP (hereinafter LR), an accounting firm – jointly
commenced this action alleging, among other things, that the
sexually harassing conduct of defendant Thomas J. Ross, the sole
owner of LR, subjected them to a hostile work environment in
violation of the Human Rights Law (see Executive Law § 296 [1]).
Defendants ultimately moved for, among other things, summary

judgment dismissing the complaint, and plaintiffs cross-moved for certain other relief.  Supreme Court denied defendants' motion for summary judgment insofar as it sought dismissal of the complaint against Ross and LR, granted it in all other respects and denied plaintiffs' cross motion.  This cross appeal ensued.

Defendants argue that Supreme Court erred in partially denying their motion for summary judgment dismissing plaintiffs' complaint, as no plaintiff established a prima facie case of a hostile work environment due to sexual harassment.  We agree. While Ross' alleged conduct was certainly offensive and grossly unprofessional, those aspects of it that were sexually harassing were not severe or pervasive enough to render any plaintiff's work environment objectively hostile and abusive as these terms are construed under the Human Rights Law.

In order to establish the existence of a sexually hostile work environment, an individual plaintiff must show that his or her workplace was "'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his or her] employment and create an abusive working environment'" (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 310 [2004], quoting Harris v Forklift Sys., Inc., 510 US 17, 21 [1993]; accord Minckler v United Parcel Serv., Inc., 132 AD3d 1186, 1187 [2015]).  All of the circumstances must be considered, including "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance" (Minckler v United Parcel Serv., Inc., 132 AD3d at 1187 [internal quotation marks and citations omitted]). Moreover, the workplace must be both subjectively and objectively hostile.  That is, a plaintiff must not only perceive that the conditions of his or her employment were altered because of discriminatory conduct, but the conduct also must have created an environment that a reasonable person would find to be hostile or abusive (see Forrest v Jewish Guild for the Blind, 3 NY3d at 311; Minckler v United Parcel Serv., Inc., 132 AD3d at 1187; Clauberg v State of New York, 95 AD3d 1385, 1387 [2012]).

Turning first to plaintiff Debbi Pawson, she alleges that, in the five months that she was employed at LR, Ross called her "stupid" and indicated that she was a "cold" person on a number of occasions. Pawson further alleged that, after Ross found errors on paperwork that she had completed, he threw them at her while shouting expletives, which she claims caused her to have a stress-related seizure. As offensive as this conduct may be, there is no evidence that any of it was based upon Pawson's gender, which is a requirement of a workplace sexual harassment claim (see Matter of Rensselaer County Sheriff's Dept. v New York State Div. of Human Rights, 131 AD3d 777, 778 [2015], lv denied 26 NY3d 1128 [2016]; Suriel v Dominican Republic Educ. & Mentoring Project, Inc., 85 AD3d 1464, 1466 [2011]). Moreover, the majority of Pawson's gender-related allegations involve occasional derogatory comments that Ross made about other female coworkers; the few comments that Ross did allegedly direct at Pawson amount to "isolated remarks or occasional episodes of harassment," which do not support the existence of a sexually hostile or abusive work environment (Clauberg v State of New York, 95 AD3d at 1387 [internal quotation marks, brackets and citations omitted]; accord Ferrer v New York State Div. of Human Rights, 82 AD3d 431, 431 [2011]).

Similarly, the allegations of plaintiffs Heidi Anderson and Carissa Conley do not reflect the "steady barrage of opprobrious [gender-based] comments" ordinarily required to alter the conditions of one's employment (Forrest v Jewish Guild for the Blind, 3 NY3d at 311 [internal quotation marks and citations omitted]; see Harris v Forklift Sys., Inc., 510 US at 21). Anderson stated that the extent of Ross' discriminatory conduct toward her consisted of a handful of references to her as a "dumb blond" and two instances in which he called her "Mae West" over the course of a year. For Conley's part, she testified that Ross once claimed at a staff meeting that he and she would be sharing a hotel room during an upcoming business trip. On another occasion he allegedly told a client that they had showered together. He also made additional, sporadic remarks about her appearance and work attire. Significantly, however, after resigning her position at LR and during the application process for unemployment benefits, Conley stated that while she believed that she had been the victim of sexual harassment, she did not

quit because of it, but did so because of Ross' anger issues, a concession that further undermines her claim that she was subjected to gender-based discrimination (see Minckler v United Parcel Serv., Inc., 132 AD3d at 1188-1189).

Finally, plaintiff Mary Buban alleged that Ross would call her by insensitive nicknames, occasionally referring to her as "Blondie" and "Money Bunny" during the year that she worked at LR. Unlike her coworkers, Buban testified that, on one occasion, Ross made inappropriate physical contact with her when he "swatted [her] on the butt" with papers that he was holding. Buban further testified that, a few days later, Ross jokingly told her that "[i]f [she] didn't work better . . . he was going to bring his paddle from home" and, on three or four subsequent occasions, he stood in the doorway of her office and made spanking motions with his hands. While we recognize that there are circumstances in which a few extraordinarily severe instances of sexual harassment can establish a hostile and abusive work environment, Ross' alleged conduct toward Buban — although certainly reprehensible — simply does not meet the standard of egregiousness and depravity that is contemplated by case law (compare Tomka v Seiler Corp., 66 F3d 1295, 1302, 1305-1306 [2d Cir 1995] [rape], and San Juan v Leach, 278 AD2d 299, 299-300 [2000] [while on a business trip together, supervisor entered the plaintiff's hotel room, climbed into her bed and attempted to kiss and touch her; on another occasion he exposed and fondled his genitals], with Quinn v Green Tree Credit Corp., 159 F3d 759, 768 [2d Cir 1998] [supervisor deliberately touched the plaintiff's breasts with papers he was holding], and Hernandez v Kaisman, 103 AD3d 106, 114 [2012] [supervisor deliberately touched the plaintiff's rear end and told her she should tighten it up]).

We do not, by any means, condone Ross' alleged actions toward plaintiffs. However, as none of them can establish, as a matter of law, that they were subjected to a sexually hostile work environment, we must reverse Supreme Court's order insofar as it partially denied defendants' motion for summary judgment. In light of our decision, the parties' remaining arguments have been rendered academic.

McCarthy, J.P., Egan Jr., Devine and Clark, JJ., concur.


ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as partially denied defendants' motion; motion granted in its entirety, summary judgment awarded to defendants and complaint dismissed; and, as so modified, affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court