(25 Misc. Rep. 561.)

### LASSALL v. PATI et al.

(Supreme Court, Special Term, New York County. December, 1898.)

1. MORTGAGE OBTAINED BY FRAUD—RIGHTS OF ASSIGNEE.

A broker, after showing a customer a house, negotiated a sale to a brother-in-law, and, by deceiving the customer, sold him the property at an advanced price; the brother-in-law taking a mortgage for his profit, which he transferred to plaintiff. *Held* that, the brother-in-law being a party to the scheme to deceive the mortgagor, neither he nor his assignee could enforce the mortgage.

2. SAME.

The mortgagor, on discovering the fraud, could retain the property, and set up the fraud as a defense to the mortgage.

3. SAME—DISAFFIRMANCE.

That the mortgagor did not disaffirm the transaction immediately on discovering the fraud, and paid an installment to such brother-in-law after he knew of the imposition, cannot prevent his availing himself of his defense to the balance due, it not being shown that he was in any manner estopped by his payment.

Action of foreclosure by Charles Lassall against Pasquali Pati and others. Judgment for defendants.

Hayman & Rosenthal, for plaintiff.

Waldo G. Morse, for defendants.

DALY, J. The facts established by the evidence are that Pasquali Pati, the defendant, desiring to purchase a house, availed himself of the services of Siegfried Blumenthal, a real-estate broker, stationer, and printer, who took him on the afternoon of December 11, 1897, to look at certain property, and showed him No. 317 East 109th street. The same afternoon, after leaving the defendant, Blumenthal negotiated a sale of the house to his brother-in-law, Martin Kretsch, from the owner, one Rothstein, for $14,500, and, the same day, without disclosing that fact to Pati, got him to purchase the property from Kretsch for $16,500, suffering Pati to remain under the impression that he was purchasing in the regular way from the owner of the property. Pati paid the consideration of $16,500 to Kretsch by assuming mortgages, paying $500 cash, and giving a third mortgage for $1,500 to Kretsch, which Kretsch as-

signed to the plaintiff, Lassall; and, this action being brought to foreclose it, Pati defends on the ground that the mortgage was without consideration.

The relationship between Blumenthal and Kretsch and the circumstances under which the latter was hastily brought in to become a purchaser at $14,500, in order that he might make a resale immediately at $2,000 profit, make it reasonably certain that he was not dealing in good faith, but knew that he was called in to assist in obtaining, by indirection, from some customer of Blumenthal, a larger sum than such customer would have had to pay, if Blumenthal had performed his duty fairly towards him. It is urged in support of the transaction that it is an everyday occurrence for property to change hands in so short a time for a considerable advance in price. We may conceive such to be the fact, and that such a transaction may be unimpeachable; but this can never be the case where the broker for the last purchaser instigates the intervening transaction, with a party whose relations with him are such as to warrant the belief that there is concert between them. It is claimed that Kretsch had been previously negotiating for this property with a prior owner, but nothing was done about it until Blumenthal arranged to sell from him to Pati. As Kretsch could not enforce a mortgage taken under circumstances which made him a party to a scheme to deceive the mortgagor, his assignee can have no greater rights, and the defendant here must be held to have established a good defense to this foreclosure upon the facts of the case. Briggs v. Langford, 107 N. Y. 680, 14 N. E. 502.

The fact that the defendant did not disaffirm the transaction immediately upon discovery of the fraud does not prevent his setting up his legal defense to the enforcement of the mortgage. His legal rights growing out of the fraud are unimpaired by his election not to avail himself of his equitable remedy of disaffirmance. He could retain the property, and set up the fraud as a defense in an action for the price. "By proving the fraud the vendee may reduce the demand, where his injury is less than the price unpaid; and, where it is equal or greater, he may defeat the action altogether." Whitney v. Allaire, 4 Denio, 554–556, and cases cited; Van Epps v. Harrison, 5 Hill, 63; Gould v. Bank, 99 N. Y. 337, 2 N. E. 16. This action upon the purchase-money mortgage is in fact an action for part of the price, and can be defeated altogether by proving fraud by which the defendant was damaged to the amount of the particular security.

Nor has the defendant lost the right to avail himself of his defense to the balance claimed upon the mortgage by having paid one installment upon it to Kretsch after discovery of the imposition practiced upon him; nor by delay in asserting his rights as a defrauded party. To bar him from setting up a legal defense to the collection of the balance, it would have to be shown that he was in some manner estopped by his payment. Mere laches, unaccompanied by circumstances amounting to estoppel, constitute no bar. New York Bank-Note Co. v. Hamilton Bank-Note Engraving & Printing Co., 28 App. Div. 419, 50 N. Y. Supp. 1093; Hasberg v.

McCarty, 13 Daly, 415. The elements of estoppel are absent in this case. The payment of the installment was made to Kretsch, the mortgagee; and no estoppel works in his favor, because he was not an innocent party. Baker v. Insurance Co., 43 N. Y. 283. There can be no estoppel by that act in favor of his subsequent assignee, this plaintiff. "An admission or representation is no estoppel in favor of a stranger to whom it is not made, and whose conduct it was not expressly designed to influence." Mechanics' Bank v. New York & N. H. R. Co., 13 N. Y. 599–638.

Judgment for defendant, with costs.